UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

BORHAN Y. MUSLEH, a/k/a Burhan
Musleh, a/k/a Tony Monstella, a/k/a
Tony Musleh, a/k/a Tony Mosleh,
a/k/a Burhan Y. Mushel,

*Defendant-Appellant.*

No. 03-4886

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-03-197)

Argued: June 2, 2004

Decided: August 20, 2004

Before WIDENER and WILLIAMS, Circuit Judges,
and Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed in part, vacated in part, and remanded with instructions by
unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Paul Geoffrey Gill, Assistant Federal Public Defender,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Vir-

ginia, for Appellant. Laura C. Marshall, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Frank W. Dunham, Jr., Federal Public Defender, Richmond, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

When applying for a social security number (SSN) on May 22, 1998, under a different name, Borhan Musleh falsely informed the Commissioner of Social Security that he had not previously been issued a SSN. In fact, Musleh had obtained a SSN thirteen years earlier. As a result of Musleh's misrepresentation, the Commissioner issued Musleh a second SSN. Because the Virginia Division of Child Support Enforcement (DSCE) used Musleh's original SSN to track his income, and Musleh had his substantial earnings reported under the second SSN, Musleh was able to avoid an increase in his child support obligation. After Musleh's use of multiple SSNs came to the attention of federal authorities, an investigation ensued and a federal grand jury returned a four-count indictment against Musleh. Following a one-day bench trial, the district court found Musleh guilty on all counts. At sentencing, the district court, *sua sponte*, ordered that restitution be paid to Musleh's daughter and ex-wife and, on the Government's motion, upwardly departed from the sentencing range prescribed by the *U.S. Sentencing Guidelines Manual* (2002). Musleh now appeals, challenging the district court's decisions to admit certain evidence at trial, to impose restitution, and to depart upwardly. For the reasons that follow, we affirm Musleh's conviction and the district court's upward departure, but we vacate the district court's restitution order and remand the case for further proceedings.

## I.

### A.

The evidence adduced at trial showed the following. Musleh came to the United States in 1984 with a Jordanian passport, and on April 23, 1985, he applied for his first SSN. In the application for that SSN, he listed his name as "Borhan Yousuf Mosleh" and his mother's name as "Amineh Mosleh." (J.A. at 42-43.) The Commissioner duly issued SSN xxx-xx-1835 (the 1835 SSN)[1] to the defendant as "Borhan Mosleh." On August 16, 1988, Musleh applied for a replacement social security card, and changed the spelling of his last name to "Musleh." The application included the questions, "Has a Social Security number card ever been requested for the [applicant]?" and "Was a card received for the [applicant]?" (J.A. at 568.) Musleh answered "Yes" to both questions and received a duplicate card bearing the 1835 SSN. (J.A. at 568.) Musleh later used this SSN to obtain a driver's license from the Virginia Department of Motor Vehicles (DMV). This license had an expiration date of July 31, 2001.

On May 22, 1998, Musleh again applied for a SSN. The application included the question, "Has the applicant or anyone acting on his/her behalf ever filed for or received a Social Security Number Card before?" (J.A. at 572.) Musleh responded "No." (J.A. at 572.) On the application, Musleh also changed the spelling of his first and last names to "Burhan" and "Musleh" respectively, and he changed his mother's maiden name from "Mosleh" to "Monstella." (J.A. at 572.) Because Musleh had altered the spelling of his name and claimed that he never had been issued a SSN, the Commisioner had no reason to deny the application and issued Musleh SSN xxx-xx-2057 (the 2057 SSN).

Musleh then used the 2057 SSN to apply for an original driver's license, notwithstanding the fact that his 1835 SSN driver's license was still valid. The DMV issued a driver's license under the name,

---

[1]Consistent with the directive to parties in our Notice of Electronic Availability of Case Information, *see* http:// www.ca4.uscourts.gov/ pdf/ notice_electroniccaseinfo.pdf, we disclose only the last four numbers of the SSNs that are relevant to this case.

"Burhan Musleh," using the 2057 SSN. Musleh did not surrender his 1835 driver's license. When Musleh renewed the 2057 license on June 29, 2001, as the result of a change in address, he returned the original 2057 license issued to him on June 9, 1998.

After receiving the 2057 SSN, Musleh used both the 1835 and 2057 SSNs. For example, Musleh applied for United States citizenship in October 1997 using the 1835 SSN. During an interview with an immigration official on June 9, 2000, Musleh not only failed to inform the examiner of the 2057 SSN, he also averred to the examiner and on the application, under penalty of perjury, that the 1835 SSN was accurate and that he had not knowingly committed a crime for which he had not been arrested. Musleh also applied for a U.S. passport on January 19, 2001, using the 1835 SSN. (J.A. at 660-62.) During the same time period, Musleh used the 2057 SSN in applications for credit and financing and when he created a counterfeit academic transcript from George Mason University.

Relevant to this appeal, Musleh used both SSNs for employment purposes. Until March 1999, Musleh worked for a company called Aerotek/Maxim Group and reported his earnings from that company under the 1835 SSN. By April 1999, Musleh had ceased working for Aerotek/Maxim and had begun working for a company called Quantum Resources Corp., using his 2057 SSN and earning $42,378.80 from April to December 1999.

During early 1999, Musleh's ex-wife, Melinda Campos, petitioned the Virginia state court to increase Musleh's child-support payment in support of their daughter, N.M.[2] In March 1999, DCSE notified Musleh that his support obligation would increase to approximately $600 per month from $199 based on his earnings from Aerotek/Maxim during 1998 as reported under the 1835 SSN. In contesting this proposed increase, Musleh lied to DCSE officials, telling them he was no longer employed. Later, at a support review hearing in October 1999, Musleh falsely claimed that he was earning only

---

[2]Consistent with the directive to parties in our Notice of Electronic Availability of Case Information, *see* http:// www.ca4.uscourts.gov/ pdf/ notice_electroniccaseinfo.pdf, we truncate the name of Musleh's minor child to her initials, N.M.

$1,781.73 per month, much less than the amount he actually earned each month from Quantum. DCSE verified the claimed assets of a non-custodial parent by checking the income reported under that parent's SSN. Thus, because DCSE was using the 1835 SSN to verify Musleh's income, DCSE was unaware of Musleh's income from Quantum that was reported under the 2057 SSN. Therefore, the court only increased Musleh's support obligation, effective as of August 1999, to roughly $228 per month.

### B.

In January 2003, federal authorities received information that Musleh was using multiple SSNs and commenced an investigation. As a result of the investigation, a grand jury sitting in the Eastern District of Virginia returned a four-count indictment against Musleh charging him with furnishing false information to the Commissioner of Social Security with the intent to deceive in violation of 42 U.S.C.A. § 408(a)(6) (West 2003) (Count One); knowingly making a false statement to federal officials in violation of 18 U.S.C.A. § 1001(a) (West 2000) (Count Two); using a falsely obtained SSN with intent to deceive on June 8, 1998, to obtain a driver's license in violation of 42 U.S.C.A. § 408(a)(7)(A) (West 2003) (Count Three); and using a falsely obtained SSN with intent to deceive on June 30, 2001, to obtain a driver's license in violation of 42 U.S.C.A. § 408(a)(7)(A) (Count Four). Musleh was found guilty on all counts in a one-day bench trial held on July 25, 2003. Musleh timely filed motions for new trial and for judgment of acquittal, both of which the district court denied.

In the pre-sentence investigation report (PSR) prepared for Musleh's sentencing, the probation officer applied § 2B1.1 of the U.S. Sentencing Guidelines, the section governing a broad range of property and fraud-related offenses, to determine Musleh's offense level. *See U.S. Sentencing Guidelines Manual*, § 2B1.1 (2002). Under U.S.S.G. § 2B1.1, Musleh's base offense level for each offense of conviction was 6 under subsection (a), and he was subject to no increases in his offense level due to specific offense characteristics under subsection (b), or due to victim-related, role, or obstruction adjustments under Chapter 3 of the Guidelines. All of the offenses were grouped pursuant to U.S.S.G. § 3D1.2(b), yielding a combined

adjusted offense level of 6, which, when combined with Musleh's criminal history category of I, resulted in a guideline sentence range of 0-6 months. Importantly, the PSR concluded that "[t]here are no identifiable victims or restitution issues that the Court needs to address in this case." (J.A. at 354.) The PSR also concluded that, based on Musleh's net worth of $44,768 and lack of liquid assets, "he is capable of paying the minimum fine, but does not appear to be able to pay an additional fine in an amount sufficient to pay the cost of any periods of imprisonment or supervision, or any interest on any fine." (J.A. at 361.)

The United States did not object to the probation officer's calculation of Musleh's sentence under the Guidelines or to the probation officer's finding that restitution was not appropriate, but it did move for a six-level upward departure. The Government's upward departure motion was based on two components. First, the Government noted that, although the probation officer correctly found that U.S.S.G. § 2B1.1(b) did not allow for the attribution of any financial loss related to Musleh's conduct, the Guidelines did not take into account the fact that Musleh's acquisition of the second SSN under false pretenses facilitated his evasion of child-support in the amount of roughly $18,000. Thus, argued the Government, a four-level upward departure — *i.e.*, an increase to the level that would have applied had the $18,000 been taken into account under U.S.S.G. § 2B1.1(b)(1)(C) — was appropriate. Second, the Government noted that Musleh had lied to federal officials in applying for U.S. citizenship by failing to disclose that he had acquired a second SSN and that he had committed criminal acts (*i.e.*, his false statements to the Commissioner of Social Security in acquiring the 2057 SSN) for which he had not been arrested, and that this uncharged conduct should be taken into consideration under U.S.S.G. § 1B1.4, which allows sentencing courts to consider the defendant's conduct "without limitation" in determining whether departure is appropriate. In order to account for this aspect of Musleh's conduct, the Government argued, the district court should increase Musleh's offense level by an additional two levels to a total offense level of 12 — *i.e.*, the level that would apply under U.S.S.G. § 2J1.3 for crimes of perjury.

At the sentencing hearing, the district court granted the Government's motion for upward departure. After the upward departure,

Musleh's guideline range was 10-16 months, and the district court sentenced Musleh to 16 months of imprisonment. (J.A. at 334.) In addition, the district court, *sua sponte* and without objection from Musleh, imposed restitution, explaining as follows:

> I have considered his net worth and liquid assets and find that he is *not* capable of paying a fine.
>
> Pursuant to section 3663 of Title 18, I find that there are identifiable victims requiring restitution. The court further finds that the defendant's ex-wife and daughter are victims, as that term is defined in section 3663, and were directly harmed by the defendant's criminal conduct in the course of this scheme.
>
> The court orders restitution to Melinda Campos for [N.M.] in the amount of $18,326. The restitution is due and payable immediately and during the period of incarceration. . . .

(J.A. at 336 (emphasis added).) The district court then immediately recessed.

Musleh filed a timely notice of appeal, challenging the district court's admission of certain evidence at trial, the decision to depart upwardly, and the decision to impose restitution.

II.

A.

Musleh first contends that the district court abused its discretion in admitting evidence at his trial. For the reasons stated below, we disagree.

According to Musleh, the district court should have excluded evidence that Musleh used a different name with employers and friends because such evidence was intended to portray Musleh as having a deceitful character, and thus, was improper character evidence under Fed. R. Evid. 404(b). The district court erred further, Musleh argues,

in admitting evidence that Musleh used the two different SSNs to keep his child support obligations artificially low because such evidence was "irrelevant, unduly prejudicial, and otherwise inadmissible. It was too remote in time and otherwise not so related to the charged conduct as to justify its admission . . . ." (Appellant's Br. at 20.) Musleh also argues that the district court committed plain error in admitting evidence of Musleh's general credit histories under different SSNs.[3] Musleh contends that had the erroneously admitted evidence properly been excluded, there would have been insufficient evidence to support his conviction on each of the four counts, thus justifying a judgment of acquittal or the grant of a new trial.

We review a district court's admission of evidence for abuse of discretion. *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997). As a general matter, all relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The evidence about which Musleh now complains satisfies this standard. Intent was an element of each of the four charges — Counts One, Three and Four required a showing of "intent to deceive," and Count Two required a showing that Musleh acted knowingly and willfully — and thus was a "fact that is of consequence" to the resolution of the case. Fed. R. Evid. 401. The evidence regarding Musleh's extensive use of the two SSNs (for reporting earnings, in obtaining multiple driver's licenses, and in obtaining credit) and multiple identities certainly made it more probable that he acted with the requisite intent as opposed to making an innocent mistake. Accordingly, this evidence was relevant.

Notwithstanding the relevance of the evidence, Musleh contends that Rules 403 and 404(b) require its exclusion. Under Rule 403 relevant evidence "may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid.

---

[3]Unlike the other categories of challenged evidence, Musleh did not object to this evidence below.

403. We have held, however, that this rule of exclusion is relaxed significantly in the context of a bench trial:

> [I]n the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial. . . . Rule 403 was designed to keep evidence not germane to any issue outside the purview of the jury's consideration. For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences.

*Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994). Thus, whatever the prejudicial effect of the evidence here, we are confident that the district rejected any improper inferences and considered the evidence only to the extent it was properly relevant.

Musleh also contends that the evidence violated the prohibition against "prior bad act" evidence contained in Rule 404(b). Under Rule 404(b),

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, . . . intent, . . . or absence of mistake or accident, . . . .

Thus, "[e]vidence of prior bad actions is admissible under Rule 404(b) if the evidence is (1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; and (3) reliable." *United States v. Hodge*, 354 F.3d 305, 312 (4th Cir. 2004). As explained above, the evidence here was relevant to Musleh's intent, a required element of all of the charged offenses, and Musleh does not contend that the evidence was anything less than reliable. Moreover, as with Rule 403, we accord district courts greater latitude at bench trials in applying Rule 404(b). *See United States v. Hassanzadeh*, 271 F.3d 574, 578 (4th Cir. 2001) (holding that admission of prior conviction evidence in a bench trial did not violate Rule 404(b) and noting, "Moreover, we have confidence that at the bench trial, the experienced district judge was able

to separate the emotional impact from the probative value of this potentially prejudicial evidence.").

The evidence about which Musleh complains was thus relevant and not subject to exclusion under Rule 403 or Rule 404(b). The district court, therefore, did not abuse its discretion in admitting it.

B.

We next consider Musleh's challenge to the district court's grant of the Government's motion for a six-level upward departure.[4] We review a district court's factual determinations made in connection with sentencing for clear error, and its ultimate decision to depart de novo. *United States v. Stockton*, 349 F.3d 755, 764 (4th Cir. 2003). We review the extent of a district court's departure for abuse of discretion. *United States v. Gary*, 18 F.3d 1123, 1127 (4th Cir. 1994).

A sentencing court may depart from the sentence ranges prescribed by the Sentencing Guidelines whenever it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C.A. § 3553(b)(1) (West 2000). In determining whether a peculiar circumstance in a case is an appropriate basis for departure, a sentencing court must determine whether that factor is encouraged, discouraged, unmentioned or forbidden. *United States v. Rybicki*, 96 F.3d 754, 757 (4th Cir. 1996) (citing *Koon v. United States*, 518 U.S.

---

[4]The Supreme Court issued its decision in *Blakely v. Washington*, ___ U.S. ___, 124 S.Ct. 2531 (2004), shortly after we heard oral argument in this case. We then *sua sponte* ordered the parties to submit supplemental briefing respecting the effect of *Blakely* on the Federal Sentencing Guidelines. Shortly thereafter, our court ordered that a separate case, *United States v. Hammoud*, No. 03-4253, be heard en banc to resolve whether and to what extent *Blakely* applies to the Guidelines. We heard argument in *Hammoud* on August 2, 2004, and issued a summary order that same day explaining that *Blakely* "does not operate to invalidate" sentences imposed under the Guidelines. *United States v. Hammoud*, No. 03-4253, ___ F.3d ___ (4th Cir. Aug. 2, 2004). In light of our disposition in *Hammoud*, Musleh's sentence is not affected by *Blakely* and will not be disturbed on that ground.

81 (1996)). When the factor in question is "encouraged," departure is "usually appropriate" unless "already adequately taken into account by the applicable guideline." *Id.* at 757-58. When the factor is "unmentioned" in the Guidelines, departure is appropriate where the "'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole' indicate that [the factor] take[s] a case out of the applicable guideline's heartland." *Id.* at 758 (quoting *Koon*, 518 U.S. at 96).

Once a sentencing court determines that departure is appropriate, it can depart only to an extent that is both reasonable under the circumstances, 18 U.S.C.A. § 3742(e)(3)(C), (f)(2) (West Supp. 2004), and derived through principled methods. *Gary*, 18 F.3d at 1131. As we explained in *Gary*, "[w]hile the extent of [a] departure may be permissible, it is not permissible without any analytical reasoning behind the decision." *Id.* Accordingly, the sentencing court must take into consideration "the rationale and methodology of the Sentencing Guidelines" in determining the extent of any departure. *United States v. Terry*, 142 F.3d 702, 707 (4th Cir. 1998). To this end, we have explained that "it is often helpful to look to the treatment of analogous conduct in other sections of the Sentencing Guidelines." *Id.* Relatedly, we have noted that "the *reasonableness* of a departure may be evaluated by 'treat[ing] the aggravating factor as a separate crime and ask[-ing] how the defendant would be treated if convicted of it.' " *Id.* at 709 (quoting *United States v. Ferra*, 900 F.2d 1057, 1062 (7th Cir. 1990)) (emphasis added) (alterations in original). Importantly, however, "an upward departure should 'not exceed the sentence that would result under the Guidelines if [the defendant] actually had been convicted of [the conduct underlying the departure].' " *Id.* (quoting *United States v. Melton*, 970 F.2d 1328, 1334 (4th Cir. 1992)) (alterations in original).

Here, the district court's upward departure consisted of two components — a four-level increase to account for evaded child support payments, and a two-level increase to account for false statements that Musleh made in connection with his application for citizenship — uncharged conduct that was a violation of 18 U.S.C.A. § 1015 (West Supp. 2004).[5] We consider each component in turn.

---

[5]Section 1015 states in relevant part as follows:

  (a) Whoever knowingly makes any false statement under oath, in

Section 5K2.9 of the Guidelines encourages departure to account for Musleh's evasion of child support. Section 5K2.9 states, "If the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct." Here, the evidence adduced at trial showed that, through his use of the fraudulently obtained 2057 SSN, Musleh was able to avoid approximately $374 per month in child support payments. Specifically, by reporting his earnings under the 2057 SSN, he was able to conceal those earnings from the DCSE, which used Musleh's 1835 SSN to verify his income. His offenses of conviction facilitated and concealed the evasion of his child-support obligation, and the Guidelines did not take this conduct into account. Accordingly, departure was appropriate under § 5K2.9.[6]

---

any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens; or . . .

(d) Whoever knowingly makes any false certificate, acknowledgment or statement concerning the appearance before him or the taking of an oath or affirmation or the signature, attestation or execution by any person with respect to any application, declaration, petition, affidavit, deposition, certificate of naturalization, certificate of citizenship or other paper or writing required or authorized by the laws relating to immigration, naturalization, citizenship, or registry of aliens; . . .

Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C.A. § 1015 (West Supp. 2004). Neither the Government nor the district court specified whether Musleh violated subsection (a), subsection (d), or both, when making false statements to immigration officials. Nevertheless, the evidence in the record supports the district court's ultimate conclusion that one of these provisions was violated.

[6]The district court appears to have relied upon application note 15 to § 2B1.1 in addition to § 5K2.9 in deciding that departure was appropriate in this case. (J.A. at 327-28.) In that application note, the Sentencing Commission recognized that "[t]here may be cases in which the offense level determined under this guideline substantially understates the seriousness of the offense[,]" and advised that "[i]n such cases, upward

In determining the extent of the upward departure, the district court performed a rough calculation of the arrearage in child-support payments, determining that it was $18,324, and then increased the offense level in accordance with U.S.S.G. § 2B1.1(b)(1)(C), the guideline that applies for offenses involving the willful failure to pay child support. *See* U.S.S.G. § 2J1.1, comment. (n.2). Under U.S.S.G. § 2B1.1(b)(1)(C), a loss amount between $10,000 and $30,000 yields an increase of four levels. On appeal, Musleh argues that the $18,324 figure is erroneous because it did not take into account factors that Virginia courts consider when calculating child-support arrearages, such as the income of the custodial parent during the relevant time period or the defendant's other child support obligations. *See* Va. Code Ann. § 20-108.2 (Michie 2000 & Supp. 2003). Furthermore, Musleh notes, the district court calculated avoided child support from March 1999, when it should have calculated from August 1999, the time when the court order modifying child support became effective. Even crediting Musleh's contentions, the district court's use of a loss figure between $10,000 and $30,000 in applying U.S.S.G. § 2B1.1(b)(1) by analogy was adequately supported by the evidence in the case. The preponderance of the evidence suggested that, whatever the precise amount, Musleh avoided at least $10,000 in payments. Moreover, Musleh has not identified any mitigating factor that would have applied in his case to reduce the amount of evaded child support obligations below $10,000. Under these circumstances, we cannot conclude that the district court abused its discretion by using the four-level increase under U.S.S.G. § 2B1.1(b)(1) by analogy as its principled method of departure.

As to the second component of the upward departure, we have held that, in accordance with U.S.S.G. § 1B1.4, uncharged conduct, although an "unmentioned" factor, may be considered in determining whether to depart. *United States v. Barber*, 119 F.3d 276, 279-82 (4th Cir. 1997). Such departures are appropriate where the heartland of the

departure may be warranted." *U.S. Sentencing Guidelines Manual* § 2B1.1, comment. (n.15(A)) (2002). Because, in conducting our de novo review, we find that § 5K2.9 independently supports departure, we need not consider whether the guidance in the commentary to § 2B1.1 also supports departure under the circumstances presented here.

offense of conviction does not encompass the uncharged conduct. *Id.* at 282. Here, Musleh's false statements to the INS in connection with his application for citizenship, a violation of 18 U.S.C.A. § 1015(a), were not accounted for by his offenses of conviction. Although loosely related to his dual SSN scheme, his false statements to the INS constituted a distinct harm that was not taken into consideration by the Guidelines. Accordingly, departure on this basis was appropriate.

In determining the extent of its departure, the district court analogized the uncharged violation of 18 U.S.C.A. § 1015(a) to the crime of perjury, and then referenced U.S.S.G. § 2J1.3, the perjury guideline, which dictates a base offense level of 12. The district court then increased Musleh's offense level from 10 (the level that applied after the four-level increase to account for Musleh's evasion of child support) to 12, a net increase of two levels. Musleh contends that the reference to the perjury guideline was inappropriate because his false statements were not material and therefore did not amount to perjury, and because § 2J1.3 would not have applied had Musleh actually been convicted of violating 18 U.S.C.A. § 1015(a). Implicit in Musleh's argument is the contention that the extent of the district court's departure was unreasonable because it was in excess of the sentence that Musleh would have received had he actually been convicted of violating § 1015(a).

We find no abuse of discretion in the method by which the district court determined the extent of departure. As a preliminary matter, we note that, by analogizing Musleh's uncharged criminal conduct to perjury and referencing the offense level applicable under the perjury guideline, the district court provided a sufficiently principled explanation for its decision to depart an additional two levels. *See Terry*, 142 F.3d at 707 (instructing that a sentencing court "must set forth some form of principled justification for its departure determination.") That is, the district court did not determine the extent of the departure in a manner that was wholly untethered from the Guidelines and thus facially unacceptable. *See, e.g., Gary*, 18 F.3d at 1131 (reversing upward departure where it appeared that "the district court simply decided to double [the defendant]'s base offense level for the sake of doubling it"); *Terry*, 142 F.3d at 707 n.6 (rejecting as a method of departure based on the defendant's reckless driving the district court's

decision to increase the offense level by one for each mile the defendant traveled while driving recklessly).

   Nor was the extent of the departure unreasonable. Assuming, without deciding, that Musleh is correct in his contention that U.S.S.G. § 2J1.3 would not apply to a violation of 18 U.S.C.A. § 1015(a), he does not identify the guideline that would govern a hypothetical conviction under § 1015(a) and thus fails to offer any theory as to why a two-level increase in offense level is unreasonable. Indeed, application of the other two guidelines that plausibly could govern such a conviction, U.S.S.G. §§ 2B1.1 and 2L2.2,[7] would yield a net increase of two levels — the same result the district court reached. Were U.S.S.G. § 2B1.1 to apply, the base offense level for the § 1015(a) violation would be 6, but because the associated distinct harm would render grouping inappropriate, application of U.S.S.G. § 3D1.4 would dictate an increase of two levels.[8] Likewise, were U.S.S.G. § 2L2.2 to apply, the base offense level would be 8 — a two-level increase over the base offense level of 6. Accordingly, a two-level increase in his offense level to account for the culpability associated with the false statements to immigration officials was reasonable and not in excess

─────────────

   [7]Appendix A to the Guidelines lists four guidelines that could govern a violation of 18 U.S.C.A. § 1015 — § 2B1.1, § 2J1.3, § 2L2.1, and § 2L2.2. U.S.S.G. app. A. There are no reported cases from any Court of Appeals or from the Supreme Court that state which guideline should apply to a violation of 18 U.S.C.A. § 1015(a). A district court in this circuit has published a decision wherein it concluded that § 2L2.2 was the appropriate guideline for such a violation. *See United States v. Biheiri*, 299 F. Supp. 2d 590, 603-04 (E.D. Va. 2004). Although the opinion in *Biheiri* is well-reasoned, we need not decide which guideline is the most appropriate, because even if § 2B1.1, the guideline generating the lowest offense level, were to apply, the end result would be the same for reasons discussed in the text above.

   [8]Section 3D1.4 provides a formula under which the combined offense level for multiple groups of offenses is determined. Assuming that U.S.S.G. § 2B1.1 would govern a conviction under § 1015, that formula would require assigning one "unit" for the four grouped offenses (*i.e.*, the actual offenses of conviction), and one additional unit for the distinct violation of § 1015. Section 3D1.4 dictates that, with a total of two units, an increase of 2 levels is appropriate.

of that which would have applied had Musleh actually been convicted of a § 1015(a) violation.

In sum, the district court's decision to depart upwardly was justified by the peculiar facts of this case, and the extent of the departure was reasonable and consistent with the rationale and methodology of the Guidelines.

C.

We next consider Musleh's argument that the district court's restitution order was improper. Before turning to the legal analysis on this issue, we must determine the appropriate standard of review. Normally, when a criminal defendant fails to preserve an issue through a timely objection, we review the issue only for plain error. Fed. R. Crim. P. 52(b). To establish plain error, an appellant

> must demonstrate that an error occurred, that the error was plain, and that the error affected his substantial rights. Even if [the appellant] can satisfy these requirements, correction of the error remains within our discretion, which we should not exercise unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Promise*, 255 F.3d 150, 154 (4th Cir. 2001) (en banc) (citation, alterations, and internal quotation marks omitted). The Government argues that we should review the district court's restitution order for plain error because Musleh did not object to restitution, either at the sentencing hearing or through a timely post-hearing motion under Fed. R. Crim. P. 35(a).[9] As Musleh notes, however, the Government's position fails to account for the fact that the first notice Musleh received that restitution might be imposed came as the district court *sua sponte* imposed restitution — the Government did not request restitution, the PSR specifically stated that there were no restitution issues, and the district court did not inform the parties that it independently was considering restitution. Under such circumstances,

---

[9]Rule 35(a) states, "Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."

Musleh argues, the issue should be reviewed under the abuse of discretion standard that normally governs restitution questions. *See United States v. Vinyard*, 266 F.3d 320, 333 (4th Cir. 2001) (applying abuse of discretion standard to restitution question). Whether a post-hearing motion under Rule 35(a) is necessary to preserve an issue for appeal under these circumstances is an issue we need not resolve, however, because the district court's imposition of restitution without providing notice to Musleh that it was considering restitution was plain error.

The district court committed two serious procedural errors in imposing restitution. First, the district court's no-notice imposition of restitution contravened the requirements of Federal Rule of Criminal Procedure 32(i)(1)(C), which states that "the court . . . must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." In *Burns v. United States*, 501 U.S. 129, 135-36 (1991), the Supreme Court explained that implicit in the right to comment on "matters relating to [an] appropriate sentence" — in that case, a *sua sponte* upward departure — is "the right *to be notified* that the court is contemplating such a ruling." A *sua sponte* order of restitution is no less a "matter relating to an appropriate sentence" than is a *sua sponte* upward departure, *see United States v. Bruchey*, 810 F.2d 456, 461 (4th Cir. 1987) ("Criminal restitution . . . is part of the sentencing process [and thus] is fundamentally 'penal' in nature."); *see also United States v. Burger*, 964 F.2d 1065, 1072-73 (10th Cir. 1992) (vacating sentence as a result of non-compliance with Rule 32 where defendant was not given notice or an opportunity to comment respecting a restitution question), and there is no credible argument that Musleh was on notice that restitution would be considered. *Cf. United States v. Bellamy*, 264 F.3d 448, 455 (4th Cir. 2001) (finding no *Burns* error where the probation officer informed defendant in the PSR that upward departure may be appropriate based on a certain guideline provision, and the district court, although relying on a different guideline provision, departed upward citing the same factual basis identified by the probation officer). Accordingly, by imposing restitution without providing notice to the parties, the district court violated the rule in *Burns*, that error was "plain," because the failure to provide notice was in "clear [and] obvious" contravention of settled law, *Promise*, 255 F.3d at 160, and that error affected Musleh's rights

because it resulted in a sentence that was significantly more serious, *United States v. Spring*, 305 F.3d 276, 282 (4th Cir. 2002). Furthermore, by imposing its restitution order without giving Musleh a meaningful opportunity to be heard on the question, the district court erred in a manner that "seriously affects the fairness, integrity [and] public reputation of judicial proceedings," *Promise*, 255 F.3d at 154, and we accordingly exercise our discretion to notice and correct the error. *See Spring*, 305 F.3d at 282-83 (noticing plain error where district court upwardly departed *sua sponte* without providing notice to the defendant in violation of Fed. R. Crim. P. 32).

Second, and perhaps as a result of its failure to notify the parties that it was considering discretionary restitution under 18 U.S.C.A. § 3663 (West 2000), the district court failed to make necessary factual findings as required by 18 U.S.C.A. § 3663(a)(1)(B)(i)(II), which requires the district court, when determining whether to impose restitution, to consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate."[10]

> This court has repeatedly held that in order to ensure effective appellate review of restitution orders, sentencing courts must make explicit findings of fact on each of the factors set forth in [§ 3663(a)(1)(B)(i)(II)]. Such findings must tie the amount and type of restitution ordered to the financial resources, financial needs, and earning ability of the defendant. Moreover the court must make a specific finding that the defendant feasibly can comply with the order without undue hardship to himself or his dependents. The district court may satisfy this requirement by announcing its findings on the record or by adopting adequate proposed findings contained within a presentence report. . . .

---

[10]The district court did not impose restitution under 18 U.S.C.A. § 3663A (West 2000 & Supp. 2004), a provision added by amendment in 1996 that makes restitution mandatory for certain offenses. Musleh's offenses of conviction are not offenses for which mandatory restitution is required under § 3663A.

*United States v. Blake*, 81 F.3d 498, 505 (4th Cir. 1996) (citations omitted). The district court made none of these findings with respect to the question of restitution, and because the probation officer did not consider restitution an option, no such findings are contained in the PSR. On remand, the district court must make these required findings.

In light of these considerations, we vacate Musleh's sentence insofar as it orders restitution be paid to Melinda Campos and N.M. and remand the case to allow the district court to consider the restitution question after hearing argument from the parties and making the necessary factual findings.[11]

### III.

For the foregoing reasons, we affirm Musleh's conviction and the district court's upward departure decision. We vacate the judgment insofar as it orders Musleh to pay restitution to Melinda Campos and N.M. and remand that issue for further proceedings consistent with this opinion.[12]

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS*

---

[11]We note that Musleh also argues that Melinda Campos and N.M. are not proper "victims" under 18 U.S.C.A. § 3663 (West 2000). We leave the proper resolution of this issue to the district court in further proceedings on remand.

[12]We note that, notwithstanding our holding here that, except for the restitution order, the sentence as imposed was lawful, the district court may choose on remand to impose an alternative sentence pursuant to 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2004), treating the Guidelines as advisory only, as discussed in this court's summary order in *Hammoud. See* ___ F.3d ___, No. 03-4253 (August 2, 2004) ("In the interest of judicial economy, however, and pending a definitive ruling by the Supreme Court, we recommend that district courts within the Fourth Circuit also announce, at the time of sentencing, a sentence pursuant to 18 U.S.C.A. § 3553(a) (West & Supp. 2004), treating the guidelines as advisory only.").