**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WALTER LEE BOYKIN, JR.,

*Defendant-Appellant.*

No. 11-4061

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Dever III, District Judge.
(5:10-cr-00027-D-1)

Argued: January 25, 2012

Decided: February 28, 2012

Before GREGORY, DIAZ, and FLOYD, Circuit Judges.

Vacated and remanded by published opinion. Judge Gregory wrote the opinion, in which Judge Diaz and Judge Floyd joined.

## COUNSEL

**ARGUED:** Stephen Clayton Gordon, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appel-

lee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Toby W. Lathan, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

## OPINION

GREGORY, Circuit Judge:

Walter Lee Boykin, Jr. challenges the use of his presentence report ("PSR") to determine the circumstances surrounding two prior violent-felony convictions for sentencing purposes. We find it was plain error for the district court to use the PSR's discussion of the circumstances surrounding these two convictions in applying an Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), enhancement. For the reasons that follow, we vacate Boykin's sentence and remand for a new sentencing hearing on this issue.

I.

In May 2009, Boykin, a convicted felon, went to a pawn shop in Goldsboro, North Carolina, where he pawned a rifle. He later attempted to redeem the gun and lied on his Bureau of Alcohol, Tobacco, and Firearms ("ATF") form when asked whether he had been convicted of a felony. He again lied on another ATF form the following month when he attempted to redeem the gun a second time, having been unsuccessful on the first try. On January 22, 2010, a grand jury sitting in the Eastern District of North Carolina returned an indictment charging Boykin with one count of being a felon in possession of a firearm and with two counts of making false statements to a federally licensed firearms dealer. 18 U.S.C. §§ 922(g)(1), (a)(6). On February 1, 2010, authorities arrested

Boykin, who had six bullets in his possession at the time. Boykin pled guilty to all charges on May 18, 2010.

In Boykin's PSR, the probation officer calculated a base guideline offense level of 20 but increased it to 33 because he determined that Boykin qualified as an armed career criminal under 18 U.S.C. § 924(e) based on three prior violent-felony convictions. The first, a 1956 conviction for second-degree murder, is not in dispute in the present case. Boykin's two other violent felony convictions, both in 1980, one for second-degree murder and the other for assault with a deadly weapon inflicting serious injury, form the basis of the present dispute.

The district court and the probation officer relied on the following account from the PSR in concluding that the offenses leading to his two 1980 convictions, although arising out of the same altercation, were committed on "occasions different from one another"—and, thus, could each serve as an ACCA predicate offense—within the meaning of 18 U.S.C. § 924(e). On December 25, 1980, Boykin and his brother Willie were at a bar and Willie Boykin became involved in a fight with James Lamb. The Boykins went to their car and retrieved their guns. Willie Boykin randomly fired his weapon inside the bar, striking Tommy Fennell in the jaw. Lamb fled the bar, and Boykin, waiting outside, shot Lamb as he exited with a .22 caliber rifle, killing him instantly. Azriah Fennell, Tommy's brother, tried to grab Boykin's rifle. Boykin took a handgun from his pocket and shot Azriah twice in the abdomen. The Fennell brothers suffered critical injuries and required hospitalization.

After applying a three-level reduction to Boykin's guideline range for acceptance of responsibility, the district court sentenced Boykin to a term of imprisonment of 180 months, the statutory minimum based on the ACCA enhancement. Without it, Boykin's guidelines range would have been 37-46

months. Boykin timely appealed the sentence on September 14, 2010.

## II.

On appeal, Boykin argues that the district court should not have used the PSR in determining his sentence because, under this Court's precedent, the PSR did not bear the earmarks of derivation from *Shepard*-approved sources. *See Shepard v. United States*, 544 U.S. 13 (2005); *United States v. Thompson*, 421 F.3d 278 (4th Cir. 2005). Boykin also contends that the district court erred in determining that his two convictions arising from the 1980 altercation were for offenses committed on separate occasions for ACCA purposes. We agree with Boykin, finding that it was plain error for the district court to use the PSR in determining that the relevant offenses occurred on separate occasions.

## A.

A threshold issue is whether Boykin preserved a challenge to the PSR for appeal. The Government argues that Boykin did not object to the use of the PSR at his sentencing, and therefore his *Shepard* challenge should be considered under the plain error standard. *United States v. Lynn*, 592 F.3d 572, 575 (4th Cir. 2010). Boykin responds that by contesting the facts of the PSR in his sentencing colloquy, he has preserved the issue for appeal. We agree with the Government.

As discussed in further detail below, this Court in *Thompson* held that a PSR can be used in ACCA determinations when the PSR "bears the earmarks of derivation from *Shepard*-approved sources such as the indictments and state-court judgments from [a defendant's] prior convictions," particularly when he "never raised the slightest objection either to the propriety of its source material or to its accuracy." 421 F.3d at 285.

It's not entirely clear whether *Thompson* intended a two-prong test for PSRs, first, whether the PSR appears to come from *Shepard*-approved sources, and second, whether the defendant objected to the source material or its accuracy. But whether a *Thompson* error can be preserved solely on an objection to the accuracy of the PSR is not a question we must address today. Boykin's alternate version of a detail contained in the PSR,* voiced by him, not his counsel, during sentencing, did not rise to the level of a proper legal objection to either the PSR's source material or its accuracy, even assuming the latter is grounds for a *Thompson* objection.

B.

Because Boykin did not preserve a challenge to the PSR for appeal, we analyze the district court's decision to use the PSR for plain error. In order to find for Boykin, we must conclude that there was an error, the error was plain, and the error affected Boykin's substantial rights. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). We may then exercise our discretion to correct the error if the error results in a "miscarriage of justice"; that is, the error seriously affects the fairness, integrity, or public reputation of judicial proceedings, or the defendant must be actually innocent. *United States v. Cedelle*, 89 F.3d 181, 184 (4th Cir. 1996) (citing *Olano*, 507 U.S. at 736-37).

The district court relied on the PSR's factual details of Boykin's 1980 shootings to make the judicial finding that the two shootings occurred on separate occasions for ACCA purposes. This inquiry was necessary, because section 924(e)(1) requires that three ACCA-predicate violent felonies or serious drug offenses have been "committed on occasions different from one another." This Court has held that offenses have been committed on different occasions when they arise out of

---

*Boykin disputed the PSR's statement that he got the gun from his pocket—he asserted that it came from someone else's hands. J.A. 73-74.

a "*separate and distinct criminal episode*." *United States v. Carr*, 592 F.3d 636, 640 (4th Cir. 2010), *cert. denied*, 131 S. Ct. 82 (2010). "Occasions" are "those predicate offenses that can be isolated with a beginning and an end—ones that constitute an occurrence unto themselves." *United States v. Letterlough*, 63 F.3d 332, 335 (4th Cir. 1995). To determine if the episodes are separate, we ask

> (1) whether the offenses arose in different geographic locations; (2) whether the nature of each offense was substantively different; (3) whether each offense involved different victims; (4) whether each offense involved different criminal objectives; and (5) whether the defendant had the opportunity after committing the first-in-time offense to make a conscious and knowing decision to engage in the next-in-time offense.

*Carr*, 592 F.3d at 644 (citation omitted). "We can consider these factors together or independently, and 'if any one of the factors has a strong presence, it can dispositively segregate an extended criminal enterprise into a series of separate and distinct episodes.'" *Id.* (quoting *Letterlough*, 63 F.3d at 336).

The Supreme Court has limited the sorts of documents that can be used consistently with the Sixth Amendment by a sentencing judge in deciding whether to apply the ACCA enhancement. Most relevant is *Shepard*, which teaches that some details about a conviction are contained in the very fact of the conviction. But judges cannot resolve a "disputed fact . . . about a prior conviction," if doing so requires data that was not inherent in that prior conviction. *Shepard*, 544 U.S. at 25. To allow otherwise would cause district courts to hold what would essentially be a new trial on the previous convictions. Nevertheless, a district court may consult a number of so-called "*Shepard-approved* sources"—such as the indictment, a judge's findings of fact (in a bench trial), and a plea

colloquy—because the facts contained therein are considered to be facts about the convictions themselves. *Id.* at 26.

*Shepard* did not address whether a district court may also consult a PSR when considering an ACCA sentence enhancement. But this Court in *Thompson* interpreted *Shepard* to mean that a PSR can be used in ACCA determinations when it "bears the earmarks of derivation from *Shepard*-approved sources such as the indictments and state-court judgments from [a defendant's] prior convictions," particularly when he "never raised the slightest objection either to the propriety of its source material or to its accuracy." 421 F.3d at 285. While Boykin disputed one of the facts contained in the PSR during his allocution, his lawyer did not claim that the description of the shootings was factually inaccurate, nor did he challenge the sources from which the facts were derived.

The question is therefore whether the facts detailed in the PSR "bear[] the earmarks of derivation from *Shepard*-approved sources." *Id.* First, there is no indication in the PSR itself that the information therein came from *Shepard*-approved sources. *Compare United States v. Vann*, 660 F.3d 771, 817 (4th Cir. 2011) (en banc) (Niemeyer, J., dissenting) (quoting the PSR, "*[a]ccording to the indictment*, on December 17, 1991, Vann willfully did take and attempt to take immoral, improper, and indecent liberties with a child . . . for the purpose of arousing and gratifying sexual desire and did commit a lewd and lascivious act upon the body of said child"), *with* J.A. 97-98 (no mention of *Shepard*-approved sources in the PSR).

Second, the factual details of the encounter are not typically found in *Shepard*-approved sources. The indictments and other *Shepard*-approved sources for these two 1980 convictions might well have included some details bearing on the "separateness" of the two convictions, as analyzed under the factors set forth in *Letterlough*. For example, one would expect the indictments to have included the date, location, and

victim(s) of the alleged crimes, and the criminal statutes alleged to have been violated, and this *Shepard*-approved information would certainly inform the *Letterlough* analysis.

The record on appeal, however, does not include the under-lying indictments or any other *Shepard*-approved documents. Further, a jury convicted Boykin on the two charges stem-ming from the 1980 altercation; therefore, there exists no plea colloquy, or judicial factfinding during the course of a bench trial, that could have conceivably revealed the level of detail of the confrontation as recounted in the PSR and accepted by the district court. As such, we simply cannot determine which facts contained in Boykin's PSR related to his prior convic-tions "bear[] the earmarks of *Shepard*-approved documents."

Thus, while it was not error to use the PSR to determine that two crimes had in fact been committed by Boykin—that information is something that would exist in an indictment or other *Shepard*-approved source—it was error for the district court to use the PSR's factual details of the encounter to apply the ACCA enhancement to Boykin's sentence.

The error was also plain. There is nothing in the record to show that the PSR's recounting of the circumstances sur-rounding the two 1980 convictions exist in *Shepard*-approved sources. Although some of the information might well appear in such sources, most of it would not, particularly since the sources could not include a plea colloquy or bench findings.

We next turn to whether the error affected Boykin's sub-stantial rights. Without the PSR's details, the only informa-tion that can be applied to the *Letterlough* analysis is the fact that Boykin was convicted of two violent felonies committed on the same day. It cannot be said that simply because two crimes have been committed they necessarily occurred on dif-ferent occasions; such an interpretation would nullify the different-occasions language in § 924(e). The *Letterlough* fac-tors are nearly useless on this record; ACCA cannot apply on

such a meager factual basis. We find that the use of the PSR's facts affected Boykin's substantial rights because he was sentenced to 180 months of incarceration, drastically exceeding his advisory guidelines range. This result was based on the mere fact that he was convicted of two violent felonies, which alone is insufficient to show that Boykin's offenses necessarily occurred on different occasions, as required by ACCA.

Finally, we may only exercise our discretion to correct the district court's error if it resulted in a "miscarriage of justice"; that is, if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Cedelle*, 89 F.3d at 184 (quoting *Olano*, 507 U.S. at 736-37). The error had such an effect. Such improper factfinding as occurred here strikes at the core of our judicial system's protections for criminal defendants. The magnitude of the error cries out for relief, given that Boykin's guidelines range jumped from 37-46 months to 135-168 months, with an applicable statutory minimum of 180 months. There would clearly be a "miscarriage of justice" were we to allow such a severe sentence enhancement to be applied inconsistently with the law. We therefore exercise our discretion to afford Boykin relief.

## III.

For the foregoing reasons we find it was plain error for the district court to use the PSR's recitation of the facts to determine that Boykin's convictions occurred on different occasions without having first satisfied itself that the PSR bore "the earmarks of derivation from *Shepard*-approved sources." Accordingly, we vacate Boykin's sentence and remand to the district court for a new sentencing hearing on this issue.

*VACATED AND REMANDED*