**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4096**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

DESMOND RA'KEESH WHITE,

             Defendant - Appellant.

Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston.  Thomas E. Johnston,
District Judge.  (2:13-cr-00224-1)

Argued:  March 24, 2016          Decided:  September 9, 2016

Before AGEE and WYNN, Circuit Judges, and Thomas D. SCHROEDER,
United States District Judge for the Middle District of North
Carolina, sitting by designation.

Affirmed in part, vacated in part, and remanded by published
opinion.  Judge Wynn wrote the opinion, in which Judge Agee and
Judge Schroeder joined.

**ARGUED:** Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Charleston, West Virginia, for Appellant.  Jennifer
Rada Herrald, OFFICE OF THE UNITED STATES ATTORNEY, Charleston,
West Virginia, for Appellee.  **ON BRIEF:** Christian M. Capece,
Federal Public Defender, Lex A. Coleman, Assistant Federal
Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Charleston, West Virginia, for Appellant.  R. Booth Goodwin II,

United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

---

WYNN, Circuit Judge:

Defendant Desmond Ra'Keesh White pled guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Defendant under the Armed Career Criminal Act ("ACCA"), imposing the mandatory minimum sentence of 180 months' imprisonment. 18 U.S.C. § 924(e).

On appeal, Defendant challenges the district court's denial of his motion to suppress firearm evidence, an issue preserved for appeal by conditional plea. Defendant also challenges the enhancement of his sentence under the ACCA. Defendant argues that, in light of Johnson v. United States, 135 S. Ct. 2551 (2015), a case decided during the pendency of this appeal, the district court erred in finding that his prior West Virginia burglary convictions constitute qualifying predicate crimes for purposes of the ACCA.

For the reasons that follow, we affirm the district court's denial of the suppression motion but find that, because of an intervening change in law following sentencing, the district court erroneously sentenced Defendant under the ACCA. We therefore affirm Defendant's conviction, vacate Defendant's sentence, and remand for resentencing.

I.

On July 9, 2013, Corporal Justin Doughty ("Corporal Doughty") of the Charleston Police Department was on patrol in a

3

marked police cruiser in Charleston, West Virginia when he observed a car veer out of its lane.[1] Corporal Doughty initiated a traffic stop to ascertain whether the driver was impaired. Erica Teunis was driving the car. Defendant was in the front passenger seat, and another male, referred to only as "Bone," was seated in the rear.

When he approached the driver's window, Corporal Doughty smelled an odor of burned marijuana emanating from the car. After obtaining Ms. Teunis's driver's license, Corporal Doughty asked Ms. Teunis to exit the car in order to speak with her outside the presence of the two passengers. Based on his observation of and conversation with Ms. Teunis, Corporal Doughty concluded that she was not intoxicated or otherwise impaired. While assessing whether Ms. Teunis was impaired, Corporal Doughty also inquired about the odor of marijuana. Ms. Teunis responded that she did not smoke marijuana but did not know about the other two passengers in the car.

After speaking with Ms. Teunis, Corporal Doughty requested that Defendant exit the car and then asked Defendant about the marijuana odor. Defendant denied having anything illegal in the

_____

[1] Because Defendant appeals the denial of a motion to suppress, we recount the factual background in the light most favorable to the government, the prevailing party below. See United States v. Uzenski, 434 F.3d 690, 704 (4th Cir. 2006).

4

vehicle. Corporal Doughty then placed Defendant in his police cruiser, otherwise unrestrained, and returned to the car to speak with Bone. While speaking with Bone, Corporal Doughty observed a firearm tucked in a piece of plastic molding on the side of the passenger seat where Defendant had been sitting. At that time, Corporal Doughty returned to his cruiser, placed Defendant in handcuffs, and radioed for backup.

When backup officers arrived, Corporal Doughty returned to the car and removed the firearm. After being read his Miranda rights, Defendant admitted to Corporal Doughty that the firearm belonged to him.

During the stop, Corporal Doughty also called for an officer to conduct a canine sniff to investigate the marijuana odor. The canine alerted at the passenger door and the car's center console, but it is unclear from the record if the search revealed a detectable amount of marijuana.

Defendant was indicted in the United States District Court for the Southern District of West Virginia for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant moved to suppress the firearm evidence obtained from the traffic stop. Following a hearing, the district court denied the motion. The district court found that reasonable suspicion supported the initial stop based upon Corporal Doughty's observation of Ms. Teunis's car veering out of its

5

lane. United States v. White, No. 2:13-CR-00224, 2014 WL 4629385, at *4 (S.D.W. Va. Sept. 15, 2014). The court also concluded that the odor of marijuana provided Corporal Doughty with reasonable suspicion to extend the traffic stop and, ultimately, probable cause to search the passenger compartment of the car, where the firearm was recovered. Id. at *6.

Defendant subsequently entered into a conditional plea agreement with the government, in which he agreed to plead guilty to being a felon in possession of a firearm. Pursuant to the plea agreement, Defendant preserved his right to appeal the denial of the suppression motion. Defendant entered his guilty plea on October 1, 2014.

In the presentence report, the probation officer classified Defendant as an armed career criminal under the ACCA, based on a prior West Virginia state robbery conviction and three prior West Virginia state burglary convictions. At sentencing, Defendant did not object to the ACCA designation. Finding Defendant subject to the ACCA sentence enhancement, the district court sentenced Defendant to the mandatory minimum term of fifteen years' imprisonment. See 18 U.S.C. § 924(e)(1). Absent the enhancement, Defendant would have faced a maximum sentence of ten years. 18 U.S.C. § 924(a)(2).

6

II.

A.

We first consider Defendant's argument that the district court erred in refusing to suppress the firearm evidence obtained during the traffic stop. In particular, Defendant claims that the evidence was obtained only after Corporal Doughty unconstitutionally prolonged the stop. Regarding this challenge, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Perkins, 363 F.3d 317, 320 (4th Cir. 2004).

When a police officer stops a car and detains its occupants, the traffic stop amounts to a "seizure" within the meaning of the Fourth Amendment. Brendlin v. California, 551 U.S. 249, 255 (2007); Whren v. United States, 517 U.S. 806, 809–10 (1996). Therefore, to pass constitutional muster, the stop must "not be 'unreasonable' under the circumstances." Whren, 517 U.S. at 810.

We employ the two-prong standard articulated in Terry v. Ohio, 392 U.S. 1 (1968), to assess the constitutionality of a traffic stop. United States v. Vaughan, 700 F.3d 705, 709 (4th Cir. 2012). First, we examine whether the officer had a constitutionally adequate basis for initiating the traffic stop. United States v. Rusher, 966 F.2d 868, 875 (4th Cir. 1992). Second, we examine whether the officer's subsequent actions were

7

"'sufficiently limited in scope and duration.'" United States v. Guijon-Ortiz, 660 F.3d 757, 764 (4th Cir. 2011) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion)).

As to the first prong, reasonable suspicion or probable cause to believe that a traffic violation has occurred provides law enforcement officers with a constitutionally adequate basis to initiate a traffic stop. Whren, 517 U.S. at 810; United States v. Kellam, 568 F.3d 125, 136 (4th Cir. 2009) ("[I]f an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment." (quoting United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993))).

Under the second prong, the scope of the traffic stop must not exceed the "least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Guijon-Ortiz, 660 F.3d at 764 (quoting Royer, 460 U.S. at 500). Further, the duration of the stop must be reasonable in light of its purpose. See id.; see also Illinois v. Caballes, 543 U.S. 405, 407 (2005) (noting that a traffic stop may "become unlawful if it is prolonged beyond the time reasonably required to complete [its] mission"). In the context of a stop for a traffic violation, the officer may "request[] a driver's license and vehicle registration, run[] a computer check, and issu[e] a ticket." Guijon-Ortiz, 660 F.3d at 764-65 (quoting United States

8

v. Digiovanni, 650 F.3d 498, 507 (4th Cir. 2011)). The officer must limit the duration of the stop to the length of time reasonably necessary to "issue the driver a citation and determine that the driver is entitled to operate his vehicle." United States v. Branch, 537 F.3d 328, 337 (4th Cir. 2008). "[W]hen [the] tasks tied to the traffic infraction are—or reasonably should have been—completed," however, the officer's "[a]uthority for the seizure . . . ends." Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015).

To prolong the stop beyond the scope of the traffic violation, the officer must obtain the driver's consent or possess reasonable suspicion of criminal activity. United States v. Williams, 808 F.3d 238, 245-46 (4th Cir. 2015); Vaughan, 700 F.3d at 710. "In order to demonstrate reasonable suspicion, a police officer must offer 'specific and articulable facts' that demonstrate at least 'a minimal level of objective justification' for the belief that criminal activity is afoot." Branch, 537 F.3d at 337 (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)).

Defendant does not challenge the initial basis for the traffic stop; it is undisputed that Corporal Doughty observed Ms. Teunis's vehicle veer out of its lane prior to the stop. See W. Va. Code § 17C-7-9(a)(1) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall

9

not be moved from such lane until the driver has first ascertained that such movement can be made with safety."). Rather, Defendant challenges the stop's duration. Specifically, Defendant argues that once Corporal Doughty determined that Ms. Teunis was not intoxicated or otherwise impaired, the stop should have ended. Defendant's argument is without merit.

This Court has "repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place." United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004). Therefore, "when marijuana is believed to be present in an automobile based on the odor emanating therefrom, we have found probable cause to search the automobile." Id.; see also, e.g., United States v. Lewis, 606 F.3d 193, 198 (4th Cir. 2010) (finding probable cause justifying a vehicle search when an officer "smelled the odor of marijuana emanating from the vehicle"); United States v. Carter, 300 F.3d 415, 422 (4th Cir. 2002) (holding that an officer "clearly had probable cause to search the passenger compartment of [the] vehicle without a warrant, based on the burning marijuana he smelled as he approached the car").

Corporal Doughty smelled the odor of burned marijuana when he first approached the car—before he had an opportunity to investigate the potential traffic infraction that initially justified the stop. At that point, Corporal Doughty had

10

reasonable suspicion to extend the traffic stop for a period of time sufficient to investigate the marijuana odor. Humphries, 372 F.3d at 658; see also Wardlow, 528 U.S. at 123 ("[R]easonable suspicion is a less demanding standard than probable cause." (internal quotation marks omitted)). Accordingly, the district court did not err in holding that the odor of burned marijuana provided Officer Doughty with reasonable suspicion to extend the stop.

Defendant also challenges the district court's decision to credit Corporal Doughty's testimony that he smelled burned marijuana. We accord a district court's findings based on assessments of witness credibility the "highest degree of appellate deference." United States v. Thompson, 554 F.3d 450, 452 (4th Cir. 2009) (quotation omitted). Accordingly, we will overturn a district court's credibility finding only if the witness' testimony is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it" or if the testimony is contradicted by objective evidence. Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985). At the suppression hearing, Corporal Doughty testified unequivocally that he smelled burned marijuana. Further, his subsequent actions—inquiring with the car's occupants concerning marijuana and requesting a canine sniff—corroborate his statement. The

11

district court properly exercised its discretion in crediting Corporal Doughty's testimony.

Accordingly, the district court did not err when it denied Defendant's motion to suppress. We therefore affirm Defendant's conviction.

B.

We next consider Defendant's challenge to his sentence under the ACCA. The ACCA prescribes a fifteen-year mandatory minimum sentence when a defendant is convicted of being a felon in possession of a firearm and has three or more prior convictions that qualify as "violent felon[ies]." 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" to mean a felony that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

Id. § 924(e)(2)(B).

The final clause of the above definition—which references conduct "present[ing] a serious potential risk of physical injury to another"—has become known as the ACCA's "residual clause." Johnson, 135 S. Ct. at 2556. In Johnson, a case decided during the pendency of this appeal, the Supreme Court

12

held that the residual clause is unconstitutionally vague and therefore violates due process. Id. at 2557. However, the Court's holding "d[id] not call into question . . . the remainder of the [ACCA's] definition of a violent felony." Id. at 2563.

Shortly after Johnson, Defendant filed supplemental briefing challenging his sentence. Defendant argues that, although his burglary convictions under W. Va. Code § 61-3-11(a)[2] met the definition of a "violent felony" under the residual clause at the time of his sentencing, they can no longer qualify as such in light of that clause's invalidation in Johnson. The government counters that Defendant has abandoned this sentencing claim because he did not raise the issue in his opening brief. The government also contends that, regardless of the constitutionality of the residual clause, the West Virginia burglary convictions qualify as ACCA predicate crimes because burglary is an offense specifically enumerated in the ACCA's "violent felony" definition. See 18 U.S.C. § 924(e)(2)(B)(ii).

---

[2] Although the presentence investigation report does not specify the subsection of West Virginia's burglary statute under which Defendant was convicted, the sentence Defendant received corresponds to W. Va. Code § 61-3-11(a). Likewise, the parties' briefing indicates Defendant was convicted under that subsection.

1.

As a preliminary matter, we address the government's argument that Defendant has abandoned the opportunity to appeal his sentence because Defendant raised the issue for the first time in supplemental briefing, rather than in his opening brief. Typically, we consider "contentions not raised in the argument section of the opening brief [to be] abandoned." United States v. Al-Hamdi, 356 F.3d 564, 571 n.8 (4th Cir. 2004); see also Fed R. App. P. 28(a)(8)(A); Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999). However, this Court may, in its discretion, deviate from this rule in appropriate circumstances. See A Helping Hand, LLC v. Baltimore Cty., 515 F.3d 356, 369 (4th Cir. 2008) (explaining that the Court may exercise its discretion to consider an abandoned argument if "a miscarriage of justice would otherwise result" (internal quotation marks omitted)).

Although we have not squarely addressed whether an intervening case presents such a circumstance, our unpublished decisions indicate that we have routinely allowed—and even requested—supplemental briefing on new arguments or claims when an intervening court decision upends precedent relevant to an appeal. See, e.g., United States v. Billups, No. 14-4959, 2016 WL 3254700, at *1 n.1 (4th Cir. June 14, 2016) (considering a challenge to an ACCA sentence that was first raised in

14

supplemental briefing after Johnson); United States v. Starkie, 615 F. App'x 132, 133 (4th Cir. 2015) (granting a petition for panel rehearing and directing the parties to submit supplemental briefing "addressing whether, in light of Johnson, the district court committed reversible error by classifying [the defendant] as an armed career criminal under the ACCA"); United States v. Musleh, 106 F. App'x 850, 857 n.4 (4th Cir. 2004) (noting the Court's sua sponte order for supplemental briefing after Blakely v. Washington, 542 U.S. 296 (2004)). Our sister circuits do the same. See, e.g., United States v. Durham, 795 F.3d 1329, 1330–31 (11th Cir. 2015); Joseph v. United States, 135 S. Ct. 705, 706 (2014) (Kagan, J., respecting the denial of cert.) (collecting cases).

Additionally, common sense dictates that an appellant can only "abandon" an argument that was actually available to him. See Joseph, 135 S. Ct. at 706 ("When a new claim is based on an intervening Supreme Court decision . . . the failure to raise the claim in an opening brief reflects not a lack of diligence, but merely a want of clairvoyance."). We therefore hold that when an intervening decision of this Court or the Supreme Court affects precedent relevant to a case pending on direct appeal, an appellant may timely raise a new argument, case theory, or claim based on that decision while his appeal is pending without triggering the abandonment rule.

15

That is exactly what happened in this case. At the time Defendant filed his opening brief—regardless of whether his West Virginia burglary convictions constitute "burglary" for purposes of Section 924(e)(2)(B)(ii)—it would have been futile for him to argue that those convictions did not qualify as ACCA violent felonies because they fell under the residual clause. In United States v. Davis, 689 F.3d 349 (4th Cir. 2012), we held that the similar West Virginia crime of attempted breaking and entering qualified as such under the residual clause because the crime posed the possibility of a "face-to-face confrontation between the burglar and a third party." Id. at 358 (quotation omitted). This rationale would have applied equally to burglary under W. Va. Code § 61-3-11(a). Moreover, at the time of Defendant's opening brief, it was settled law that the residual clause was not unconstitutionally vague. James v. United States, 550 U.S. 192, 210 n.6 (2007); see also Sykes v. United States, 564 U.S. 1, 15–16 (2011). When the Supreme Court decided Johnson, it expressly overruled this precedent. 135 S. Ct. at 2563. Shortly thereafter, Defendant sought this Court's leave to file supplemental briefing and challenge his sentence under the ACCA. We therefore conclude that Defendant has properly raised his ACCA claim.

16

2.

Turning to the merits, the question before us is whether Defendant's West Virginia burglary convictions can still meet the definition of an ACCA violent felony, despite the Supreme Court's invalidation of the residual clause. Specifically, we consider whether Defendant's convictions for burglary under W. Va. Code § 61-3-11(a) qualify as "burglary" within the meaning of the ACCA. See 18 U.S.C. § 924(e)(2)(B)(ii).

Because Defendant did not challenge his ACCA designation before the district court, we review for plain error. Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731–32 (1993). Under the plain error standard, Defendant must show that (1) there was an error; (2) the error is plain; and (3) the error affects substantial rights. Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016); Olano, 507 U.S. at 732. We may then exercise our discretion to correct the error if it "'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Molina-Martinez, 136 S. Ct at 1343 (quoting Olano, 507 U.S. at 736).

To determine whether a prior conviction qualifies as an ACCA enumerated offense, courts employ what is known as "the categorical approach." Descamps v. United States, 133 S. Ct. 2276, 2283 (2013). Under this approach, the court "focus[es] solely on whether the elements of the crime of conviction

17

sufficiently match the elements of [the listed] generic [crime], while ignoring the particular facts of the case." Mathis v. United States, 136 S. Ct. 2243, 2248 (2016). An offense's federal generic definition may differ from the offense's state-law definition. Thus, in applying the categorical approach, a state conviction will qualify as an enumerated offense, and thus a predicate crime under the ACCA, only if the elements of the state-law crime of conviction "are the same as, or narrower than, those of the [ACCA-enumerated] generic offense," regardless of whether the defendant actually committed the offense in its generic form. Id.; Descamps, 133 S. Ct. at 2283.

Regarding the elements of the generic offense at issue in this case, the Supreme Court has defined generic burglary as the "unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 598 (1990). Defendant contends that the West Virginia burglary statute sweeps more broadly than generic burglary because it covers enclosures other than "building[s] or . . . structure[s]." We agree.

Generic burglary's "building or other structure" element does not encompass every enclosure. For example, in Shepard v. United States, 544 U.S. 13, 15–16 (2005), the Supreme Court stated that the generic offense refers to burglary "committed in a building or enclosed space . . . not in a boat or motor

18

vehicle." Similarly, the Supreme Court recently found an Iowa burglary statute to encompass conduct outside the bounds of generic burglary because the statute specified that the crime could occur in a "land, water, or air vehicle." Mathis, 136 S. Ct. at 2250 (quoting Iowa Code § 702.12 (2013)); see also Taylor, 495 U.S. at 599 (describing a state burglary offense that prohibited breaking and entering "any booth or tent, or any boat or vessel, or railroad car" as nongeneric burglary (quoting Mo. Rev. Stat. § 560.070 (1969) (repealed))).

The burglary statute relevant here, W. Va. Code § 61-3-11(a), provides:

> If any person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of burglary.

W. Va. Code § 61-3-11(a) (emphasis added). Section 61-3-11(c) provides a non-exhaustive list of those enclosures that can constitute a "dwelling house," providing that

> [t]he term "dwelling house," . . . shall include, but not be limited to, a mobile home, house trailer, modular home, factory-built home or self-propelled motor home, used as a dwelling regularly or only from time to time, or any other nonmotive vehicle primarily designed for human habitation and occupancy and used as a dwelling regularly or only from time to time.

Id. § 61-3-11(c). Significantly, the statutory definition includes "vehicle[s]." Id. Indeed, the statute identifies a "self-propelled motor home," a vehicle regulated by West

19

Virginia's Motor Vehicle Administration statutes, as an example of a "dwelling house." Id.; see id. § 17A-1-1(ll) (defining a "[m]otor home" as a "vehicle"). Thus, in criminalizing burglary of a dwelling house, the West Virginia burglary statute encompasses conduct that is excluded from the definition of generic burglary.

The government nonetheless argues that the term dwelling house "substantially corresponds" with generic burglary's building or structure element because the term refers to enclosures used as residences. Appellee's Supp. Br. at 8-9. Our decision in United States v. Henriquez, 757 F.3d 144 (4th Cir. 2014), forecloses this argument.

In Henriquez, we considered whether Maryland first degree burglary, which requires the breaking and entering of a "dwelling of another," constitutes generic burglary under the categorical approach. 757 F.3d at 148, 151. Although the Maryland statute at issue "d[id] not define the term 'dwelling,'" we found that Maryland state courts had construed the term to mean "a place where a person resides and sleeps." Id. at 148-49. Taking note of the fact that a Maryland court "ha[d] already deemed a recreational vehicle a dwelling" and that the dwelling definition adopted by Maryland courts "easily could cover" other enclosures that the "United States Supreme Court has clearly excluded . . . from the definition of generic

20

burglary," such as "houseboat[s]," we concluded that Maryland's first degree burglary statute encompassed conduct outside the scope of generic burglary, and thus the statute did not qualify as ACCA "burglary" under the categorical approach. Id. at 149–50.

The rationale from Henriquez governs this case. Like the Maryland definition of dwelling, the West Virginia burglary statute's reference to a dwelling house "easily could cover" enclosures that are excluded from the generic definition of burglary, such as vehicles. Id. at 149. Indeed, the statutory definition of the term includes vehicles explicitly. W. Va. Code § 61-3-11(c). And, just as it was immaterial in Henriquez that Maryland's definition of "dwelling" would only capture an enclosure "where a person resides or sleeps," id., the fact that the West Virginia definition of "dwelling house" refers to enclosures used as residences or dwellings "regularly or . . . from time to time," W. Va. Code § 61-3-11(c), does not change the result here. Because W. Va. Code § 61-3-11(a) criminalizes burglary of a "dwelling house"—a term that reaches enclosures excluded from generic burglary's building or structure element—Defendant's prior burglary convictions do not qualify as the ACCA enumerated offense of "burglary" under the categorical approach.

Accordingly, we conclude that Defendant's prior West Virginia burglary convictions do not meet the ACCA definition of a "violent felony," and the district court thus erred in enhancing Defendant's sentence under the ACCA.[3]

---

[3] A modification of the categorical approach—aptly named the "modified categorical approach"—may be used when the underlying state crime is "divisible" such that it "consists of 'multiple, alternative elements' creating 'several different crimes,' some of which would match the generic federal offense and others that would not." Omargharib v. Holder, 775 F.3d 192, 197-98 (4th Cir. 2014) (quoting Descamps, 133 S. Ct. at 2284–85). Under the modified categorical approach, a sentencing court looks to so-called Shepard documents, such as the indictment, jury instructions, or plea agreement, to ascertain which of the alternative elements encompass the defendant's crime of conviction. Mathis, 136 S. Ct. at 2249 (citing Shepard, 544 U.S. at 26). The court then compares the elements of the crime of conviction with those of the generic offense. Descamps, 133 S. Ct. at 2281.

During oral argument, the question was raised as to whether W. Va. Code § 61-3-11(a) is divisible because it states alternative locational elements. See W. Va. Code § 61-3-11(a) (criminalizing entry into a "dwelling house, or an outhouse" (emphasis added)). Neither party briefed this issue, and the district court did not address it below. Moreover, there are no Shepard documents in the record pertinent to Defendant's West Virginia burglary convictions. We therefore need not and do not reach the question of divisibility to resolve this appeal. See United States v. McLeod, 808 F.3d 972, 977 (4th Cir. 2015) (holding that a conviction under a divisible statute could not qualify as ACCA "burglary" pursuant to the modified categorical approach when there were no Shepard documents "to show that the crime of conviction was generic burglary"). Nor do we express any view as to whether W. Va. Code § 61-3-11(a) satisfies the other elements of generic burglary—such as the "unlawful or unprivileged entry" element—under the categorical or modified categorical approaches.

Having determined that there was an error, we address whether the other requirements of the plain error standard are met. The second requirement of the plain error standard is that the error must be "plain," i.e., "clear or obvious." Molina-Martinez, 136 S. Ct. at 1343. In this regard, "[a]n error is plain 'if the settled law of the Supreme Court or this circuit establishes that an error has occurred.'" United States v. Carthorne, 726 F.3d 503, 516 (4th Cir. 2013) (quoting United States v. Maxwell, 285 F.3d 336, 342 (4th Cir. 2002)). Moreover, regardless of "whether a legal question was settled or unsettled at the time of trial, 'it is enough that an error be "plain" at the time of appellate consideration.'" Henderson v. United States, 133 S. Ct. 1121, 1130 (2013) (quoting Johnson v. United States, 520 U.S. 461, 468 (1997)).

Controlling precedent establishes that the error at issue in this appeal is plain. After Johnson, Defendant's prior convictions cannot qualify as ACCA violent felonies under the residual clause. Further, in light of this circuit's decision in Henriquez, W. Va. Code § 61-3-11(a) "is not reasonably susceptible to an interpretation" that it falls within the generic definition of burglary under the categorical approach.[4]

---

[4] Prior decisions from this circuit finding West Virginia state burglary convictions to qualify as ACCA burglary do not undercut this conclusion. See United States v. Lewis, 75 F. (Continued)

<u>Maxwell</u>, 285 F.3d at 342.  We therefore conclude that the second requirement of the plain error standard is satisfied.

To satisfy the third plain error requirement the error must affect substantial rights.  In the sentencing context, an error affects substantial rights if there is "a reasonable probability that," but for the error, "the district court would have imposed a different sentence." <u>Molina-Martinez</u>, 136 S. Ct. at 1349. Without the ACCA enhancement, the statutory maximum sentence for Defendant's felon in possession of a firearm conviction is ten years.  18 U.S.C. § 924(a)(2).  Thus, the sentencing error affected Defendant's substantial rights by compelling a five-year increase in his term of incarceration. <u>See</u> <u>United States v. Boykin</u>, 669 F.3d 467, 472 (4th Cir. 2012) (finding that an erroneous ACCA designation affected the defendant's substantial rights); <u>Maxwell</u>, 285 F.3d at 342–43 (finding a sentence in excess of the statutory maximum to affect defendant's substantial rights).

Finally, we may exercise our discretion to correct an error that "'seriously affects the fairness, integrity or public

---

App'x 164, 166 (4th Cir. 2003); <u>United States v. Blankenship</u>, No. 92-5354, 1993 WL 40857, at *1 (4th Cir. Feb. 18, 1993). These unpublished decisions not only predate <u>Henriquez</u>, but also the Supreme Court's decision in <u>Descamps</u>, which clarified the proper application of the categorical and modified categorical approaches. <u>See</u> 133 S. Ct. at 2283–86.

24

reputation of judicial proceedings.'" <u>Molina-Martinez</u>, 136 S. Ct. at 1343 (quoting <u>Olano</u>, 507 U.S. at 736). Here, "[t]here would clearly be a 'miscarriage of justice' were we to allow . . . a severe sentence enhancement to be applied inconsistently with the law." <u>Boykin</u>, 669 F.3d at 472. We therefore exercise our discretion to grant Defendant relief.

### III.

For the foregoing reasons, we affirm Defendant's conviction, vacate Defendant's sentence, and remand for resentencing.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>