**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 25-4324**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHNNIE TYRONE MOSES,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, District Judge.  (3:23-cr-00163-JHY-DCK-1)

_____

Argued:  March 25, 2026                                         Decided:  June 2, 2026

_____

Before DIAZ, Chief Judge, and WYNN and QUATTLEBAUM, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion, in which Chief Judge Diaz and Judge Quattlebaum joined.

_____

**ARGUED:**  Ann Loraine Hester, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlotte, North Carolina, for Appellant.  Julia Kay Wood, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  John G. Baker, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlotte, North Carolina, for Appellant.  Russ Ferguson, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

A district court's factual findings on a motion to suppress can be overturned for clear error if contradicted by objective evidence, like body-worn-camera footage.

Here, a defendant appeals the denial of a motion to suppress the evidence from a traffic stop that ultimately turned up evidence of narcotics and firearms. But nothing in the body-worn-camera footage contradicts the district court's findings that the defendant committed the red-light traffic violation that formed a basis for the stop, nor that he consented to a frisk that ultimately turned up evidence of ecstasy.

Because there was no clear error in those findings, we affirm.

I.

We recite the facts here as determined by the district court, as well as those facts brought to light by the body-worn-camera footage from the incident.

A.

On the night of October 11, 2022, Charlotte-Mecklenburg Police Officer Alec Mullis responded to a call from a person who claimed to have heard shots fired in a high-crime area of Charlotte. As Officer Mullis approached the area in his car, he noticed a car stopped at a stop sign with its brake lights on, with no other cars around. When Officer Mullis pulled up behind it, the car turned left. Officer Mullis waited five to ten seconds with his window rolled down, listening for sounds that might be related to the reported

shooting. Hearing nothing, he then accelerated to catch up with the vehicle, which was "traveling at a brisk pace." J.A. 66.[1]

While following the car, Officer Mullis ran its license plate. The plate came back as registered to a Johnnie Alford Moses, whose driver's license was suspended. Officer Mullis continued following the car, which he observed make a right turn on a steady red light without first coming to a complete stop, in violation of North Carolina law. *See* N.C. Gen. Stat. § 20-158(b)(2)a.

Officer Mullis radioed to other officers in the area that he would be performing a traffic stop. He then turned on his blue lights and siren to pull over the car. Turning on his lights automatically triggered his body-worn camera to begin recording.

When Officer Mullis approached the car after pulling it over, he saw the defendant in this case, Johnnie Tyrone Moses, driving the vehicle and informed him that he had stopped him for a suspended license.[2] Moses responded that it was his father, Johnnie *Alford* Moses, whose license had been suspended and who was the registered owner of the car.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[2] Officer Mullis claimed in post-incident reports that when he approached the passenger side of the car, he noticed "a strong odor of marijuana emitting from the windows." J.A. 70. Moses fiercely contests the veracity of that claim. However, as we note in our analysis below, even without the smell of marijuana, Officer Mullis did not violate Moses's constitutional rights in performing his various searches and seizures. Accordingly, we recite the factual record here without reference to the marijuana smell.

3

Officer Mullis asked for Moses's license and said, "I'm just going to have you step out and hang out on the sidewalk until I can verify your driver's license, just 'cause his is suspended." Mullis BWC 21:20:03–09.[3] Moses complied.

Moses then walked to the rear of his car, where Officer Mullis asked, "Do you have any weapons on you or anything like that?" *Id.* at 21:20:14–18. Moses replied, "Oh nah, nothing," and pulled up his shirt, exposing his stomach and waistline. *Id.* at 21:20:16–20. Officer Mullis then said, "Mind if I check real quick?" and reached out to begin the search. *Id.* Moses swiveled his body around to face the car and, at about the same time as Officer Mullis placed his hands on Moses's midriff, replied, "Yeah, no problem." *Id.* at 21:20:18–22.

Officer Mullis frisked Moses, during which he found a baggy of multi-colored pills in Moses's right pocket. Believing the pills to be ecstasy based on his experience, Officer Mullis began placing Moses in handcuffs. A struggle ensued, requiring a backup officer who had just arrived on scene to assist Officer Mullis and knocking the body-worn camera off Officer Mullis's chest and onto the ground.

The officers were eventually able to detain Moses and placed him in the back of Officer Mullis's vehicle.

By that time, several other officers were on the scene, including Officer Mullis's supervisor, Sergeant Allman. Sergeant Allman asked Officer Mullis for the "general"

---

[3] The parties submitted body-worn-camera footage from Officer Mullis to the district court and to this Court on appeal. We cite to that footage, with timestamps, as "Mullis BWC."

4

rundown of what had occurred up to that point. *Id.* at 21:27:13–15. Officer Mullis responded that he had seen Moses's car stopped, run its tag, seen that the registered owner had a suspended driver's license, pulled Moses over for the suspended license, asked Moses to step out of the vehicle, gotten Moses's consent to a frisk, discovered a bag of ecstasy on Moses, and placed Moses under arrest. He did not mention the red-light traffic violation.

Officer Mullis and another officer proceeded to search Moses's car. In all, the officers recovered 150.7 grams of marijuana across fourteen bags (twelve in small, 3- to 5-gram bags), a loaded handgun, five cell phones, a Louis Vuitton cross-body satchel, a tobacco grinder, and various financial records.

The next day, Officer Mullis prepared a post-incident report. In the report, unlike in his general rundown with Sergeant Allman, he included details about the red-light traffic violation. Specifically, the report notes that he observed the car make "an abrupt right turn . . . with a steady light, in violation of" North Carolina law. J.A. 30.

#### B.

A federal grand jury returned an indictment against Moses on charges of possessing a firearm as a convicted felon under 18 U.S.C. § 922(g)(1). Moses initially pleaded not guilty and filed a motion to suppress all evidence obtained as a result of the traffic stop. He argued that the officers unlawfully extended the traffic stop without reasonable suspicion, unlawfully frisked him, and searched the car without probable cause.

The district court held a suppression hearing, during which Officer Mullis testified and the court observed the body-worn-camera footage.

5

Officer Mullis testified that there were two bases for the traffic stop: the suspended license of the registered owner of the car and the car's failure to stop at a "steady red light" before making a right turn. J.A. 68. He testified that he believed Moses had given him consent to be frisked. And he testified that after the frisk turned up ecstasy, he believed that he could search the vehicle incident to arrest because he "believed that there was going to be more narcotics inside the vehicle," based on "the narcotics on [Moses's] person." J.A. 73–74.

After hearing Officer Mullis's testimony, reviewing the body-worn-camera footage, and hearing arguments from both sides, the district court denied the motion to suppress. Overall, the court found "that the testimony of the officer is very credible on the points that matter." J.A. 150. In so doing, the district court made a number of findings.

First, the court found that Officer Mullis permissibly extended the stop after discovering that Moses was not the registered owner of the car whose license was suspended because the red-light traffic violation also served as a legitimate basis for the stop. The court found credible Officer Mullis's testimony "that he observed the defendant committing a traffic infraction in his presence." J.A. 150. It concluded that that infraction provided "separate and independent grounds to conduct a traffic stop" which "did not terminate when it became apparent that the owner of the car was somebody other than the defendant"; rather, Officer Mullis "had a right to continue the investigation to dispel or confirm the traffic light violation." *Id.*

6

Second, the court found that Officer Mullis permissibly frisked Moses. As relevant here, the court found that Moses had consented to the frisk based on his physical motions and verbal agreement.

Finally, the court found that the officers had probable cause to search the vehicle, based in relevant part on the discovery of ecstasy on Moses's person.

Overall, the court found that the stop was "good" and therefore denied the motion from the bench. J.A. 152–53.

Given that ruling, Moses entered a conditional plea pursuant to Federal Rule of Criminal Procedure 11(a)(2), reserving the right to appeal the district court's ruling on the motion to suppress. The district court sentenced Moses to 46 months in prison.

Moses timely appealed.

## II.

The question in this case is whether the extended traffic stop that ultimately turned up evidence of narcotics and firearms was constitutionally permissible. For the reasons articulated below, we hold that it was.

"We review the factual findings underlying a motion to suppress for clear error and the district court's legal determinations de novo. When a suppression motion has been denied, this Court reviews the evidence in the light most favorable to the government." *United States v. Abdallah*, 911 F.3d 201, 209 (4th Cir. 2018) (quotation omitted).

We "particularly defer to [the] district court's credibility determinations, for it is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress." *United States v. Palmer*, 820 F.3d 640, 653 (4th Cir. 2016) (cleaned

7

up). A factfinder's "choice to believe one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, can virtually never be clear error." *United States v. Joseph*, 138 F.4th 797, 802 (4th Cir. 2025) (quotation omitted).

However, we may find clear error if (1) a witness's testimony is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it" or (2) "if the testimony is contradicted by objective evidence." *United States v. White*, 836 F.3d 437, 442 (4th Cir. 2016) (quotation omitted).

Moses does not dispute the constitutionality of the initial stop. Further, his argument on appeal that the search of his automobile is unconstitutional depends on us holding that the frisk was unconstitutional. Therefore, we limit our inquiry only to the constitutionality of the extension of the stop and the frisk.

A.

First, the extension of the stop.

Moses argues that Officer Mullis had no constitutional authority to continue his traffic stop beyond the point at which Officer Mullis realized that the suspended license did not belong to Moses. However, the district court found that the extension was constitutional because discovering the identity of the driver did not extinguish the need to further investigate the second basis for the stop: the red-light traffic violation.[4]

---

[4] The court also found that the officer was justified in extending the stop because the smell of marijuana changed the nature of the investigation from a traffic stop to a narcotics investigation. Because we hold that the red-light violation was sufficient on its

8

We agree with the district court.

A standard traffic stop may permissibly include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 349 (2015). And "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures." *Maryland v. Wilson*, 519 U.S. 408, 412 (1997) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977)).

Therefore, the red-light traffic violation, just like any other minor traffic infraction, made it reasonable for Officer Mullis to briefly prolong the stop to run Moses's license and even to order Moses out of the car.

We also find no clear error in the district court's finding that the red-light traffic violation was a genuine basis for the traffic stop in the first place.

Most importantly, there is nothing in Officer Mullis's testimony on this point that was "contradicted by objective evidence." *White*, 836 F.3d at 442. It is true that there is nothing in the body-worn-camera footage to *corroborate* the fact that a red-light traffic violation occurred: Officer Mullis, for example, does not mention such a violation when pulling Moses over, nor does Officer Mullis mention it in his general rundown with his supervisor. But a lack of corroborating evidence in body-worn-camera footage is not

_____

own to justify an extension of the stop, we need not reach the court's alternative justification.

9

enough to constitute clear error; the district court's findings must be "contradicted by objective evidence." *Id.*

Absent such contradicting evidence, we are left only with the district court's credibility determination, which we have little leeway to second-guess. Officer Mullis testified that he observed Moses turn right on a red light without coming to a complete stop. To explain the lack of evidence in the body-worn-camera footage, he testified that the camera does not begin saving its recording until he turns on his blue lights, which he did not do until after observing the red-light violation. And he testified that he did not bring up the red-light violation to his supervisor because Sergeant Allman asked only for a "general rundown" of the events. J.A. 116. We cannot say that the testimony here was anywhere close to being "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *White*, 836 F.3d at 442 (quotation omitted).

Because we find nothing in the footage that directly contradicts the testimony given to the district court, we find no clear error in the finding that Moses committed a red-light violation and that Officer Mullis constitutionally extended the stop on those grounds.

B.

Next, the frisk.

Even if Officer Mullis acted reasonably in prolonging the stop after he learned that Moses was not the registered owner of the vehicle, Moses argues that the evidence must

10

be suppressed because it was the result of an unconstitutional frisk. The district court, however, found that the frisk was constitutional because Moses gave his consent.[5]

When the Government "attempts to justify a search on the basis of . . . consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973).

We review the "voluntariness" of a search de novo, looking at the totality of the circumstances. *United States v. Carter*, 300 F.3d 415, 423 (4th Cir. 2002). But "the district court's factual determination as to whether consent to the search was actually given is reviewed for clear error." *Id.*

After Moses had walked to the rear of his car, Officer Mullis asked him, "Do you have any weapons on you or anything like that?" Mullis BWC 21:20:14–18. Moses replied, "Oh nah, nothing," and pulled up his shirt. *Id.* at 21:20:16–20. Solely based on these facts, it might be a close question whether Moses had consented to a search. As Moses points out, this action is easily understood as consent only to a visual search—as Officer Mullis himself seemed to understand, since he responded with a question about whether he could confirm Moses's statement with a physical search.

However, after Moses told Officer Mullis he wasn't armed, Officer Mullis followed up: "Mind if I check real quick?" and then reached out to begin the search. *Id.* at 21:20:18–

---

[5] The district court also concluded that Officer Mullis had reasonable suspicion to believe that Moses was armed and dangerous. We need not reach that issue because we find no clear error in the factual finding that Moses had given his consent to a frisk.

11

22. Moses then swiveled his body around to face the car and, at about the same time as Officer Mullis placed his hands on Moses's midriff,[6] replied, "Yeah, no problem." *Id.*

That second verbal response much more clearly establishes consent, especially when paired with the swivel of the body. *Cf. United States v. Wilson*, 895 F.2d 168, 172 (4th Cir. 1990) (upholding a district court determination that consent had been given when an officer asked a defendant if he could pat him down and the defendant "responded by shrugging his shoulders and raising his arms"). Therefore, the district court did not clearly err in its determination that Moses consented to the pat down at that point.

Thus, we affirm the district court's determination that the frisk was constitutional, and the ecstasy discovered on Moses's person is admissible.

Because the ecstasy was constitutionally discovered, law enforcement also had probable cause to search Moses's vehicle. *See United States v. Baker*, 719 F.3d 313, 319 (4th Cir. 2013) (holding probable cause "is satisfied when a police officer lawfully searches a vehicle's recent occupant and finds contraband on his person").

### III.

For the foregoing reasons, we affirm the district court's denial of the motion to suppress the evidence from the traffic stop.

*AFFIRMED*

---

[6] On appeal, Moses disputes whether the "Yeah, no problem" was verbalized before or after the officer's hands touched Moses's midriff. We find no clear error in the district court's overall finding that consent was given prior to the frisk.

12